UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JULIA RINGERING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 13-3024 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court are Plaintiff Julia Ringering's Motion for Summary Reversal (d/e 14), Defendant Carolyn Colvin's Motion for Summary Affirmance (d/e 18), and Magistrate Judge Tom Schanzle-Haskins's Report and Recommendation (d/e 20) recommending that the Plaintiff's Motion be denied and the Defendant's Motion be affirmed.  Because the Court finds that the Social Security Commission's decision was not supported by substantial evidence, the Magistrate Judge's Report and Recommendation is adopted in part and rejected in part, the Plaintiff's Motion is granted, and the

Defendant's Motion is denied.

### I. BACKGROUND

The Court notes that no objections were filed to the Magistrate Judge's Report and Recommendation. The Court adopts the factual findings of the Report and Recommendation, with one exception. Importantly, the Report and Recommendation does not recognize that the Plaintiff met with Dr. Malik not only from September to November 2009, but also from September 30 to October 9, 2008. See Rep. and Rec., d/e 20 at 12 n.3. During this period of time, the Plaintiff was hospitalized and treated by Dr. Malik for suicidal ideations and high levels of anxiety. R. 314-17.

### II. LEGAL STANDARDS

Federal Rule of Civil Procedure 72(b)(3) states that the Court "may accept, reject, or modify the [magistrate judge's] recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Generally, "[i]f no objection or only partial objection is made [to a report and recommendation], the district court judge reviews those unobjected portions for clear error." Johnson v. Zema Systems

Corp., 170 F.3d 734, 739 (7th Cir. 1999). While a clearly erroneous standard of review is the minimum standard appropriate in this context, it is not mandatory, and a district court may instead choose to apply a de novo standard of review to a Magistrate Judge's Report and Recommendation. See United States v. Malcolm et al., 2012 WL 2428209, at *6 (N.D. Iowa 2012) (citing Thomas v. Arn, 474 U.S. 140, 154 (1985)). The de novo standard allows a reviewing court to make an independent review of the entire matter. Salve Regina College v. Russel, 499 U.S. 225, 238 (1991). The Court will choose to apply the de novo standard of review in this case.

In conducting this de novo review, the Court reviews the decision of the Administrative Law Judge (ALJ) to determine whether the decision is supported by substantial evidence. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). If the decision has such support, the Court may not substitute its judgment for that of the ALJ. Id. "Substantial evidence is only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Nelson v. Apfel, 131 F.3d 1228, 1234 (7th Cir. 1997).

This Court will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record. Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008). The ALJ must articulate at least minimally his analysis of all relevant evidence, Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994), and "the [ALJ's] decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues," Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Additionally, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

### III.  ANALYSIS

The Court finds that the ALJ made a number of missteps in this case, and that, as a result, the ALJ's opinion was not supported by substantial evidence. First, the ALJ placed too much weight on the opinions of the reviewing doctors, Drs. Hill and DiFonso. Both Dr. Hill's and Dr. DiFonso's opinions were largely focused on Dr. Datta's notes from his session with the Plaintiff on March 30, 2009, in which Dr. Datta wrote that the Plaintiff's mood had improved and that she had not had anxiety attacks recently.

R. 240-41.  Based on the notes from this one session, Drs. Hill and DiFonso concluded that Dr. Datta's diagnoses of depression and bipolar disorder were not supported by the record.  See R. 266, 287.  However, these notes do not lead to that conclusion.  The Plaintiff stated that she had both manic and depressive episodes, that her depression came in cycles, and that when she was in a depression cycle, she was "depressed four to five days a week."  R. 49.  Therefore, the fact that the Plaintiff had one positive session with Dr. Datta on March 30, 2009, is consistent with the Plaintiff's testimony about her depression symptoms, and the one session does not indicate that the Plaintiff had been "cured" of her depression at that point in time.

Indeed, the other evidence in the record demonstrates that the Plaintiff's depression issues did continue beyond March 2009.  Dr. Datta's treatment notes from May 18, 2009, indicate that the Plaintiff was again suffering from panic attacks and was dealing with anger issues.  R. 242.  In September 2009, the Plaintiff's mental health problems became so severe that she checked herself into an outpatient treatment program.  R. 309-13.  Furthermore,

the Plaintiff testified at her hearing on March 3, 2011, that she was still struggling with depression, and that due to her bipolar disorder, she would be depressed for approximately five days a week for a three-week cycle.  R. 49-50.  The Plaintiff further testified that during her depressed days, she would not do anything: she would not get out of bed, shower, cook, or take care of her children.  R. 50.  The ALJ appears to have not credited the Plaintiff's testimony regarding her symptoms and limitations based on the reports of Drs. Hill and DiFonso.  However, because of the limited scope of their review, Dr. Hill's and Dr. DiFonso's reports do not provide an adequate basis for discounting the Plaintiff's testimony.  By focusing on Dr. Hill's and Dr. DiFonso's opinions, which did not examine any notes after March 31, 2009—the Plaintiff's date last insured (DLI)—the ALJ ignored the significance of events post-March 2009 that demonstrated the Plaintiff's prolonged struggle with depression and bipolar disorder.  See Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2013) (looking to evidence of depression after the plaintiff's DLI to corroborate the plaintiff's depression diagnosis from before her DLI); Parker v. Astrue, 597 F.3d 920, 924

(7th Cir. 2010) (criticizing the ALJ for not relating later evidence of the claimant's depression to her condition before her DLI), as amended on reh'g in part (May 12, 2010).

The ALJ also violated Social Security regulations by placing more weight on the opinions of the reviewing doctors, Drs. Hill and DiFonso, than the opinions of the treating doctors, Drs. Datta, Nigam, and Malik.  Under 20 C.F.R. § 404.1527(c), the ALJ was required to weigh the opinions of the Plaintiff's treating doctors more heavily than the opinions of the reviewing doctors.  See 20 C.F.R. § 404.1527(c) (advising that ALJs should "give more weight to opinions from [a claimaint's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimaint's] medical impairment(s)," and mandating that if a treating source's opinion is well-supported, the ALJ "will give it controlling weight"). Additionally, Social Security Ruling 96-2p advises that "[i]f a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight."  See SSR 96-2p, Policy

Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions.  While Social Security Rulings "do not have the force of law," they are important "interpretive rules intended to offer guidance to agency adjudicators" and are "'binding on all components of the Social Security Administration.'"  <u>Lauer v. Apfel</u>, 169 F.3d 489, 492 (7th Cir. 1999) (quoting 20 C.F.R. 402.35(b)(1)); <u>see also</u> <u>Bray v. Comm'r Soc. Sec. Admin.</u>, 554 F.3d 1219, 1224 (9th Cir.2009) ("[Social Security Rulings] do not carry the 'force of law,' but they are binding on ALJs nonetheless.").  The Court finds that the ALJ ran afoul of SSR 96-2p and 20 C.F.R. § 404.1527 by uncritically accepting the opinions of Drs. Hill and DiFonso and improperly dismissing the opinions of Drs. Datta, Nigam, and Malik.

Furthermore, it appears likely that the ALJ and Drs. Hill and DiFonso were not actually able to read most of Dr. Datta's treatment notes, as the notes are almost completely illegible.  This concern is supported by the fact that the ALJ and Drs. Hill and DiFonso fixated on the treatment notes of March 30, 2009, without discussing much of the remainder of his notes.  <u>See</u> R. 33, 266,

287.  If the ALJ and Drs. Hill and DiFonso could indeed not read the majority of Dr. Datta's notes, they should not have found that Dr. Datta's treatment notes did not support his listing and decision. Instead of dismissing Dr. Datta's opinion based on the illegibility of Dr. Datta's notes, the ALJ should have further developed the record, possibly by having Dr. Datta testify at the Plaintiff's hearing or requesting additional information from Dr. Datta.  See Bishop v. Sullivan, 900 F.2d 1259, 1262 (8th Cir. 1990) (finding that "illegibility of important evidentiary material can warrant a remand for clarification and supplementation" and remanding case due to the illegibility of much of the claimant's doctor's notes); Gravel v. Astrue, No. 11 C 1695, 2012 WL 1533390, at *1 (N.D. Ill. Apr. 30, 2012) ("Where the record is illegible because of poor copy quality or handwriting, courts may remand the case for clarification and supplementation.").  Because the ALJ dismissed Dr. Datta's opinion instead of fully developing the record to determine whether Dr. Datta's opinion supports the Plaintiff's disability claim, the Court can remand the case to allow the ALJ to further supplement the record.  See Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009)

("While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record."); Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000) ("Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence."); see also Richards v. Astrue, 370 F. App'x 727, 731 (7th Cir. Apr. 13, 2010) ("[A]n ALJ may not draw conclusions based on an undeveloped record and has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable").

    The ALJ also failed to account for Dr. Malik's treatment notes. The ALJ mentions that the Plaintiff briefly entered into inpatient treatment, R. 33, but he does not address Dr. Malik's findings. Dr. Malik met with the Plaintiff from September 30 to October 9, 2008 and September to November 2009. See R. 306, 316-17. Dr. Malik's findings that the Plaintiff was suffering from suicidal ideations and high levels of anxiety support the Plaintiff's claim for disability benefits, and those findings should have been directly addressed by the ALJ. See R. 314-17.

    Additionally, the ALJ's functional capacity analysis was

essentially not supported by any evidence. The ALJ focused on the fact that Dr. Sohn advised that the Plaintiff should stay active, R. 34, but that phrase is rather ambiguous. For a person with neck and back problems, with which Dr. Sohn diagnosed the Plaintiff, "staying active" likely would not mean the high level of activity that the ALJ listed in his functional capacity analysis. Moreover, when the Plaintiff did take up more active tasks, such as traveling and working around her house, she reported to Dr. Sohn that she was in significant pain afterwards. See R. 324, 357. In light of the pain that this sort of work caused the Plaintiff, the ALJ should not have found that the Plaintiff could be employed as a housekeeper. See R. 36. In essence, the specific functional capacity findings of the ALJ—that the Plaintiff could stand or sit for six hours out of an eight hour work day, with only occasional breaks—does not have any support in the record. See R. 31; Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). The only support for the ALJ's description appears to have come from the Plaintiff's description of her activities the last

time she was employed, at Walmart, as the ALJ's description is almost identical to the Plaintiff's description of her position at Walmart.  Compare R. 31 and R. 166.  However, the Plaintiff's injuries to her neck and back occurred *after* the Plaintiff stopped working at Walmart.  Because the Plaintiff's post-Walmart injuries limited her ability to function, the ALJ's functional capacity analysis should not have been based on the Plaintiff's activities at Walmart, leaving his analysis largely unsupported.

Lastly, the ALJ accepted the vocational expert's findings without scrutiny, a practice that the Seventh Circuit has criticized. See Voigt v. Colvin, 781 F.3d 871, 879 (7th Cir. 2015) (criticizing the ALJ for "fully credit[ing] the vocational expert's testimony" without critically questioning the vocational expert about the basis for his findings).  On remand, the ALJ should follow the guidance of the Seventh Circuit and more closely scrutinize the data put forth by the vocational expert regarding the number of available jobs.

### IV.  **CONCLUSION**

For those reasons, Judge Schanzle-Haskins's Report and Recommendation (d/e 20) is ADOPTED in part and REJECTED in

part, the Plaintiff's Motion for Summary Reversal (d/e 14) is GRANTED, and the Defendant's Motion for Summary Affirmance (d/e 18) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the ALJ is reversed and the Plaintiff's cause is remanded to the ALJ. In addition to reconsidering the evidence that was originally submitted by the Plaintiff, the ALJ is instructed to consider the later-submitted reports of Drs. Malik and Sohn. See R. 379-85. The Court recognizes that under Wolf v. Shalala, 997 F.2d 321, 323 n.3 (7th Cir. 1993), this later-submitted information could not, on its own, warrant a remand for reconsideration under sentence six of 42 U.S.C. § 405(g). Here, however, the Court is reversing and remanding under sentence four of section 405(g), and the later-submitted evidence should be considered for the sake of a complete review of all evidence of the Plaintiff's condition. The Clerk is directed to close this case.

    ENTER: August 4, 2015.

                                  s/ Sue E. Myerscough
                                  SUE E. MYERSCOUGH
                                  UNITED STATES DISTRICT JUDGE